# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Cynthia Jeanne Mitchell, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 11 C 50329 |
| | ) | |
| Kenneth W. Nesemeier, et al., | ) | |
| | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion to dismiss for failure to state a claim [76] is granted in part and denied in part. Counts II-IV, VI-VIII, and X are dismissed, as are defendants Williams, Vogt, and Lentz. Plaintiff's motion for summary judgment as to Counts I & XI [82] is denied.

## STATEMENT

Plaintiff, Cynthia Mitchell, has sued defendants, Stephenson County Sheriff David Snyders, Deputies Kenneth Nesemeier and Phillip Williams, Stephenson County State's Attorney John Vogt, Assistant State's Attorney Joe Lentz, and Stephenson County, for various violations of her constitutional rights arising from plaintiff's November 12, 2009 arrest and subsequent prosecution. That prosecution resulted in plaintiff being acquitted of all charges. Currently before the court are defendants' motion to dismiss seeking dismissal of Counts II-X of plaintiff's third amended complaint and plaintiff's motion for summary judgment on Counts I and XI. For the reasons which follow, defendants' motion is granted in part and plaintiff's motion is denied.

### I. BACKGROUND

The following facts are taken from the third amended complaint. On November 12, 2009 at about 5:30 p.m., plaintiff was at her home, a trailer in Freeport, Illinois. Plaintiff heard a loud pounding on her front door and asked who was there. Nesemeier answered that it was the police and ordered plaintiff to open the door. When plaintiff inquired as to why Nesemeier wanted her to open the door, he answered: "To search the house." Plaintiff alleges that she demanded that Nesemeier obtain a search warrant before he could enter, but, instead, Nesemeier banged on the front and rear doors of plaintiff's home for approximately thirty minutes. Nesemeier then "tricked Plaintiff into opening the door by claiming that all he wanted to do was talk to her," and that once she unlocked the door, he forced his way into her home. Plaintiff claims that she attempted to push back against the door being opened, but that Nesemeier was stronger than her and thus overpowered her resistance.

Once Nesemeier was inside her home, he grabbed plaintiff's arm and twisted it behind her back up to the back of her head, and then pinned her on top of a love seat. Nesemeier then

handcuffed plaintiff and began hitting her in the face. Plaintiff alleges that Nesemeier hit her so hard that he "broke her glasses and dislodged one of her permanently attached ear piercings." Nevertheless, Nesemeier then took plaintiff out to his vehicle, patted her down on her breasts and buttocks, and then forced plaintiff into his vehicle.

Before Nesemeier left the scene, plaintiff's husband, James Mitchell, provided Nesemeier with plaintiff's medications and informed him that she needed the medications for her bipolar disorder. Nesemeier then transported plaintiff to the Stephenson County Jail. When plaintiff arrived at the jail, defendant Williams did an intake screening at which time he asked plaintiff whether she was taking any medications, to which she responded, "Yes." Plaintiff informed Williams that she had bipolar disorder. Plaintiff claims that because James Mitchell gave Nesemeier plaintiff's medication and told him that the medications were for bipolar disorder, Williams "knew or should have known that the medication then in his possession was the plaintiff's treatment for bipolar disorder." In any event, plaintiff never received her medications because Williams allegedly refused to give them to her, and as a result she suffered some of the symptoms which the medications were designed to prevent. According to the exhibits attached to the complaint, plaintiff was bonded out of jail the same day she was arrested.

After plaintiff's arrest and after conferring with Lentz, Nesemeier issued plaintiff two citations: one for battery and one for resisting or obstructing a peace officer. A bench trial took place on August 12, 2011, at which the court found plaintiff not guilty of the offenses with which she was charged. Plaintiff alleges that Nesemeier "admitted under oath to not having a warrant to enter the residence."

In light of the foregoing, on November 10, 2011, plaintiff filed her complaint in the instant matter. Over the next year and a half, plaintiff filed several amended complaints, culminating in the current version, the third amended complaint.[1] The third amended complaint sets out eleven claims: that Nesemeier violated her Fourth Amendment right to be free from unreasonable search and seizure pursuant to 42 U.S.C. § 1983 (Count I); Lentz violated her rights to due process pursuant to § 1983 (Count II); Williams was deliberately indifferent to her serious medical needs in violation of the Fourteenth Amendment pursuant to § 1983 (Count III); Lentz maliciously prosecuted her pursuant to Illinois tort law (Count IV); Nesemeier maliciously prosecuted her pursuant to Illinois law (Count V); Nesemeier and Lentz engaged in a conspiracy to deprive her of her rights pursuant to Illinois law (Count VI); Snyders maintained inappropriate policies in hiring, training, and supervising Williams and Nesemeier which led to constitutional deprivations pursuant to § 1983 (Count VII); defendants Vogt, Snyders, and Stephenson County are responsible for indemnifying any damages (Counts VIII, X, and XI respectively); and Snyders is responsible for his officers' actions under the theory of <u>respondeat superior</u> pursuant to Illinois law (Count IX). Defendants have responded with a motion to dismiss, seeking dismissal of Counts II-X. Also pending is plaintiff's motion for summary judgment as to Counts I and XI based on the findings of the state trial court at plaintiff's trial. The court will consider each motion in turn.

## II. ANALYSIS

---

[1]This court has already ruled upon a motion to dismiss plaintiff's second amended complaint, which dismissed part of Count I and a number of other claims.

## A. Defendants' Motion to Dismiss

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). Under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

In their motion to dismiss, defendants argue that: (1) Lentz has absolute prosecutorial immunity from suit and thus all claims against him, and all claims for indemnification by Vogt on account of Lentz' actions, should be dismissed; (2) the claims against Williams and Lentz should be dismissed because they are time barred; (3) plaintiff has failed to state a plausible cause of action for conspiracy; (4) plaintiff has failed to state a plausible cause of action under Monell against Snyders; (5) the indemnification claims against Vogt and Snyders should be dismissed because Stephenson County is the entity responsible for indemnification based on the facts of this case; (6) plaintiff has failed to state a plausible cause of action for malicious prosecution against either Lentz or Nesemeier; (7) plaintiff has failed to state a plausible cause of action for deliberate indifference against Williams; and (8) Count IX should be dismissed because the state law claims, as set out in the previous arguments, should be dismissed and respondeat superior is not available for § 1983 claims. Plaintiff responds that: (1) Williams was timely served, (2) plaintiff has set out a plausible cause of action under Monell against Snyders, (3) plaintiff has set out a plausible claim for malicious prosecution against Nesemeier, (4) plaintiff has set out a plausible claim for deliberate indifference against Williams, and (5) that the claim for respondeat superior against Snyders should not be dismissed.

As is clear by comparing those lists, plaintiff did not respond to much of defendants' thorough and well-supported motion to dismiss. By failing to respond to those arguments, plaintiff has waived her right to contest them. See Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)). Her waiver means that this court will grant the motion as to each waived argument and dismiss those claims, and defendants, as warranted. See id. ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." (quotation marks omitted)); Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver. . . . This leaves us no choice but to accept U.S. Bank's assertions—supported as they are by pertinent legal authority—that the allegations in the Bontes' complaint do not entitle them to relief."). That means (1) all claims against Lentz are dismissed as barred by prosecutorial immunity and all claims against Vogt, which are all derivative of the claims against Lentz, are also dismissed;

3

(2) all claims against Lentz are also dismissed as time barred; (3) the claim for conspiracy does not set out a plausible right to relief and must be dismissed; (4) the claims for indemnification against Snyders and Vogt must be dismissed; and (5) the claim for malicious prosecution against Lentz must also be dismissed for failure to state a plausible claim. Therefore, Counts II, IV, VI, VIII, and X are dismissed, along with defendants Lentz and Vogt. The court will consider the remaining arguments in turn.

### 1. The Timeliness of the Allegations Against Williams

Defendants argue that all claims against Williams are time barred, as plaintiff's only contact with Williams was on November 12, 2009 when he allegedly failed to provide her with her bipolar medication for the less-than-one-full-day she was in jail. In plaintiff's original complaint, filed November 10, 2011, she sued a "John Doe" officer, whom she later discovered was defendant Williams. Williams was not named in the complaint, nor served with the complaint, until the third amended complaint, which was filed on March 19, 2013, nearly three-and-a-half years after the original contact. Plaintiff does not contest that time line, but argues that her claims relate back to the filing of her original complaint under either the identity of interest or shared attorney exceptions to the timeliness requirements.

Suits under § 1983 use the statute of limitations and tolling rules that states employ for personal-injury claims. Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). Illinois has a two-year statute of limitation on personal injury claims. See 735 ILCS 5/13-202. So, on their face, the claims against Williams asserted for the first time in March 2013 are untimely. Whether a claim "relates back" to the filing of an original complaint, as plaintiff argues is the case here, is controlled by Federal Rule of Civil Procedure 15. Rule 15(c) provides:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .
>
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted if, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). Defendants concede that plaintiff's claim against Williams arose out of the conduct, transaction, or occurrence set out in the original pleading, so that the requirement under Rule 15(c)(1)(B) is satisfied. Defendants hone in on the requirement under Rule 15(c)(1)(C)(ii) that

4

plaintiff had to have made a "mistake" in identifying the incorrect party. The Seventh Circuit has explained the "mistake" provision of Rule 15:

> We have previously held that the "mistake" clause of Rule 15(c)'s "relation back" provision "permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where . . . there is a lack of knowledge of the proper party." Wood v. Worachek, 618 F.2d 1225, 1229 (7th Cir. 1980). Since Wood . . . we have repeatedly reiterated that "relation back" on grounds of "mistake concerning the identity of the proper party" does not apply where the plaintiff simply lacks knowledge of the proper defendant.

Hall v. Norfolk S. Ry. Co., 469 F.3d 590, 596 (7th Cir. 2006) (first alteration in original). Under the Seventh Circuit's interpretation, a plaintiff's failure to know the identity of a defendant is not a "mistake," and thus the court has squarely held "John Doe" officers cannot be added to a complaint after the running of the statute of limitations under Rule 15. See Worthington v. Wilson, 8 F.3d 1253, 1255-58 (7th Cir. 1993). Although plaintiff flatly ignores the "mistake" provision of the law, and the Seventh Circuit's interpretation of the same, some courts have questioned that interpretation in light of the Supreme Court's subsequent decision in Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 130 S. Ct. 2485 (2010). See, e.g., Brown v. Deleon, No. 11 C 6292, 2013 WL 3812093, at *6 (N.D. Ill. July 18, 2013) (suggesting in dictum, but deciding the case on other grounds, that, in light of Krupski, lack of information as to a defendant's identity satisfies the mistake requirement of 15(c)). The court first finds that plaintiff's failure to challenge Hall and its progeny results in waiver of any right to make such a challenge. See Furry v. United States, 712 F.3d 988, 994 n.1 (7th Cir. 2013). Notwithstanding that waiver, since Krupski, the Seventh Circuit has continued to rely on its interpretation of "mistake" in this context, albeit in an unpublished opinion. See Flournoy v. Schomig, 418 F. App'x 528, 532 (7th Cir. 2011) ("Last, Flournoy contends that the district court should have allowed him to amend his complaint to identify the unnamed prison officials whose names he learned after carrying out discovery. But the district judge did not abuse his discretion in denying Flournoy's request because the statute of limitations (two years in Illinois) had run. The untimely amendment would not 'relate back' to the date of his original complaint because Flournoy made no mistake; he simply lacked knowledge of the proper defendants." (citations omitted)).

Nevertheless, even if the court were inclined to ignore plaintiff's waiver, the court agrees with the courts that hold that, even in light of Krupski, plaintiff made no mistake; she simply did not know, and apparently did not investigate, Williams' identity during the statute of limitations. In Krupski, the Supreme Court faced a different issue than what the court is faced with in this case—plaintiff there knew, or should have known, of the existence, and the identity, of the party it should have named, but failed to do so. See Krupski, 130 S. Ct. at 2493. The Supreme Court rejected the court of appeals' determination that, because plaintiff knew or should have known the identity of the correct party, plaintiff made a deliberate choice, rather than a mistake, in naming the wrong party. See id. at 2493-94. Specifically, the Court held that just because "a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." Id. at 2494; see also id. ("A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff

5

may know generally what party A does while misunderstanding the roles that party A and party B played in the conduct, transaction, or occurrence giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a mistake concerning the proper party's identity notwithstanding her knowledge of the existence of both parties." (quotation marks omitted)). However, the Court did not eliminate the mistake requirement entirely and require only the notice requirement, instead it reiterated that a "mistake is an error, misconception, or misunderstanding; an erroneous belief." See id. (alterations and quotation marks omitted). Here, in contrast to the situation in Krupski, plaintiff simply did not know Williams' identity during the statute of limitations, and so there is no tenable argument that plaintiff made an error, had a misconception, or held an erroneous belief. See Daniel v. City of Matteson, No. 09-cv-3171, 2011 WL 198132, at *4 (N.D. Ill. Jan. 18, 2011) ("Relation back under Rule 15(c)(1)(C) unequivocally requires a mistake. A mistake is an error, misconception, or misunderstanding; an erroneous belief. Here, Plaintiff does not claim to have made a mistake as to [the unknown officer's] identities; he claims he did not know their identities until April 2010. Lack of knowledge as to the proper defendant is not a mistake." (alteration and quotation marks omitted)). Accordingly, plaintiff has not established that he failed to name Williams within the statute of limitations on account of a mistake and therefore cannot take advantage of Rule 15's "relate back" provisions.

Plaintiff's reliance on the identity of interest doctrine to provide the necessary "mistake" is also misplaced. First, that doctrine only applies to the notice provision of Rule 15(c)(1)(C)(i), not the mistake provision of Rule 15(c)(1)(C)(ii). See Wood v. Worachek, 618 F.2d 1225, 1229-30 (7th Cir. 1980) (interpreting a prior version of Rule 15 with different numbering of the sections). Second, contrary to plaintiff's assertions, there is no identity of interest between Nesemeier and Williams—they are sued for different things based on different factual allegations and are completely separate legal entities. See id. at 1230; see also Norton v. Int'l Harvester Co., 627 F.2d 18, 21 (7th Cir. 1980) ("The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate." (quotation marks omitted)). Thus, even if the identity of interest doctrine were capable of saving plaintiff from the timeliness bar—which it is not—it would not apply in this case to even meet the notice requirement, much less the mistake requirement.

Plaintiff's reliance on the shared attorney doctrine is similarly misplaced. The shared attorney doctrine permits a court to impute notice onto a party under Rule 15(c)(1)(C)(i) based on the third party having the same representation as a party to the current suit. However, plaintiff again attempts to misuse a doctrine which establishes the notice provision of Rule 15(c)(1)(C)(i) to establish the mistake provision of Rule 15(c)(1)(C)(ii). See Wood, 618 F.2d at 1230; see generally Garvin v. City of Phila., 354 F.3d 215, 223-27 (3d Cir. 2003) (discussing the doctrine and the concept of imputed notice at some length). Additionally, even under that theory, it is insufficient that a defendant is later represented by the same party to a litigation, as Williams is now represented by the same attorney that represents Nesemeier. Instead, he must have been represented by that same legal representation prior to the running of the statute of limitations. See Wood, 618 F.2d at 1230 ("Although Officer Sobcyk is presently represented by the same counsel who represented defendants Worachek and Goulet at the trial of this action, he was not represented by an attorney

6

at the time of his deposition nor at any other time with respect to this suit prior to the date the plaintiff served him with a summons and copy of the amended complaint. Since the claims asserted by the plaintiff against defendants Worachek and Goulet, as jailers, are separate and distinct from the claims asserted against defendant Sobcyk, he does not have the benefit of the pretrial discovery and trial defense preparation undertaken on behalf of defendants Worachek and Goulet."). Although Nesemeier and Williams are represented by the same counsel at this time in the litigation, there are no allegations of shared representation at the time the statute of limitations ran, nor any indication that any such allegations are possible within the restraints of Rule 11. Accordingly, even if the shared attorney doctrine could help plaintiff—and, again, it cannot—it would not apply in this situation to even establish notice.

In the end, then, plaintiff has failed to establish either the notice or mistake requirements of Rule 15(c)(1). As a last ditch effort, plaintiff accuses defendants of being dilatory in providing plaintiff with Williams' name so that plaintiff could amend her pleadings to name Williams, presumably within the statute of limitations. This argument also cannot save plaintiff's claims against Williams. Plaintiff waited until two days before the statute of limitations for the § 1983 claims had run against all of the defendants to file the instant suit—the complained-of incidents occurred November 12, 2009 and plaintiff filed her original complaint on November 10, 2011. None of the defendants were served until December 13, 2011. Even if defendants had gratuitously offered up Williams' name on that date (which they were under no obligation to do under Federal Rule of Civil Procedure 26 at that juncture), plaintiff would still have been unable to amend her complaint within the original statute of limitations. Without relation back, regardless of defendants' alleged dilatory behavior, plaintiff's claims against Williams are untimely. And plaintiff, as set out above, does not qualify for Rule 15's relation back doctrine.

In summary, then, plaintiff's claim for deliberate indifference (Count III) against Williams is dismissed as untimely.

## 2. The Monell Claim against Snyders

Defendants next move to dismiss plaintiff's claim against Snyders for inadequate training, supervision, and hiring practices. Plaintiff does not allege that Snyders was directly involved in Nesemeier's interaction with plaintiff, but that he maintained unconstitutional policies that caused her treatment.

The Supreme Court has held that there is no vicarious liability based on employee misconduct for government entities, or private entities acting to fulfill a government duty, and instead the employer can only be sued directly for its own misconduct. See Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To hold a defendant, such as Snyders, directly liable under Monell, plaintiff must establish

> evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

Lewis v. City of Chi., 496 F.3d 645, 656 (7th Cir. 2007) (quotation marks omitted). Accordingly,

7

to set out a plausible Monell claim, plaintiff must assert factual allegations that, when accepted as true, state a right to relief based on the existence of one or more of the aforementioned elements, and must offer neither legal conclusions nor a recitation of the elements of the cause of action. See Iqbal, 556 U.S. at 678; see also McCauley v. City of Chi., 671 F.3d 611, 618 (7th Cir. 2011) (stating that plaintiff must allege facts that enable the court to draw the reasonable inference that defendant established a policy or practice causing deprivation of plaintiff's constitutional rights).

The allegations which make up the Monell claim against Snyders are:

> 53. Prior to November 12, 2009, the Stephenson County Sheriff's Department developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in Stephenson County, which caused the violation of Plaintiff's rights.
>
> 54. It was the policy and/or custom of the Stephenson County Sheriff's Department to fail to exercise reasonable care in hiring its police officers, including Defendants Nesemeier and Williams, thereby failing to adequately prevent constitutional violations on the part of its police officers.
>
> 55. It was the policy and/or custom of the Stephenson County Sheriff's Department to inadequately supervise and train its Defendant officers, including Defendants Nesemeier and Williams, thereby failing to adequately discourage further constitutional violations on the part of its Defendant officers.
>
> 56. As a result of the above described policies and customs, Defendant officers, including Defendants Nesemeier and Williams, believed that their actions would not be properly monitored by supervisory personnel, and that misconduct would not be investigated or sanctioned, but would be tolerated.
>
> 57. The above described polices and customs demonstrate a deliberate indifference on the part of the Stephenson County Sheriff's Department to the constitutional rights of persons within Stephenson County, and were the cause of the violations of Plaintiff's rights alleged herein.

(Compl. at 9-10.) Additionally, plaintiff incorporates all of the allegations against Nesemeier and Williams by reference. (See Compl. at 9.) Based on those things, plaintiff argues in her response that she has sufficiently alleged a widespread practice, thereby alleging sufficient information to make out her Monell claim.

Plaintiff is incorrect. First, defendants argue that plaintiff's allegations in paragraphs 53-57 are conclusory statements which fail to set out a plausible claim under Iqbal. Plaintiff, in her response, does not contest that at all. And for good reason, it is well established that boilerplate allegations of "policy and/or custom" to "inadquately supervis[e] and train[]" are insufficient to avoid dismissal based on Iqbal's admonition that conclusory legal statements without factual context are insufficient to meet the plausibility standard. See McCauley, 671 F.3d at 618. Second, the incorporation of the allegations against Nesemeier and Williams is also insufficient. In order to establish a Monell claim under the widespread practice doctrine, plaintiff must set out her claim "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must

8

have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004) (quotation marks omitted); see also Freeman v. Fairman, 916 F. Supp. 786, 790 (N.D. Ill. 1996). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985). The Seventh Circuit has said, in synthesizing the case law arising from Tuttle, that courts are required to take "the word 'widespread' . . . seriously." Phelan v. Cook Cnty., 463 F.3d 773, 790 (7th Cir. 2006). Accordingly, plaintiff must allege sufficient incidents and "weave these separate incidents together into a cognizable policy." Id. Here, plaintiff has only alleged two incidents, Nesemeier's alleged entry into her home and assault and Williams' alleged failure to provide her with constitutionally adequate medical care. See id. (rejecting "widespread practice" claims based on only two, three, or even "multiple" incidents). Additionally, other than the fact that both incidents happened to plaintiff, there are no allegations weaving the two incidents together to create an inference of a cognizable "permanent and well-settled" policy. Id. (quotation marks omitted). Accordingly, the court grants the motion to dismiss the Monell claim (Count VII) against Snyders.

### 3. Malicious Prosecution Against Nesemeier

Defendants next move to dismiss the claim for malicious prosecution (Count V) against Nesemeier. Defendants argue that plaintiff's complaint inadequately alleges the malice component to a malicious prosecution claim and that plaintiff has failed to set out that she suffered any damages from the malicious prosecution because the complaint states that "[a]s a direct and proximate result of the acts of Defendants, acts that violated clearly established and well-settled federal constitutional rights, the Plaintiff suffered injuries and damages." (Compl. at 7 (emphasis added).)

Turning to defendants' second argument first, there is no merit to their contention. The sentence quoted immediately above simply states that through the acts of defendants plaintiff suffered damages. The sentence has a clause that defendants' acts "violated clearly established and well-settled federal constitutional rights," but does not say what defendants read it as saying—that because the acts violated federal constitutional rights, they could not have also violated state tort law rights. Furthermore, plaintiff rightly points out that, should she be successful, her damages may include, "in addition to general damages, compensation for any arrest or imprisonment, including damages for discomfort or injury to [her] health, or loss of time and deprivation of the society." Heck v. Humphrey, 512 U.S. 477, 484 (1994) (quotation marks omitted). Plaintiff's complaint sets out allegations concerning her arrest and imprisonment and various claims for discomfort and injury. Without belaboring the point any further, plaintiff has sufficiently alleged damages to sustain a malicious prosecution claim against Nesemeier.

The more difficult issue is the first argument raised by defendants, namely whether plaintiff's complaint sufficiently alleges malice. "Illinois law requires, to show malicious prosecution, proof not only of lack of probable cause but also of 'malice,' which means in this context that the officer who initiated the prosecution had any motive other than that of bringing a guilty party to justice." Aleman v. Vill. of Hanover Park, 662 F.3d 897, 907 (7th Cir. 2011). The parties argue over what the standard is to show malice; plaintiff contends that an inference of malice is raised by a showing

9

of lack of probable cause, while defendants assert that malice is a separate element of the malicious prosecution tort requiring some further showing. The court understands the parties' confusion; the Illinois courts, both on the state and federal levels, have been far from consistent in how they treat the malice requirement. Compare, e.g., McDade v. Stacker, 106 F. App'x 471, 475 (7th Cir. 2004) (interpreting Illinois law and stating a plaintiff "must allege more than a lack of probable cause; rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence" (quotation marks omitted)); Thomspon v. Vill. of Monroe, No. 12 C 5020, 2013 WL 3337801, at *21 (N.D. Ill. July 1, 2013) (same); with Reynolds v. Menard, Inc., 365 Ill. App. 3d 812, 840 (2006) (stating that malice can be inferred by the lack of probable cause where that lack is clear); Frye v. O'Neill, 166 Ill. App. 3d 963, 977 (1988) ("[W]e conclude the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes that inference."); Scott v. Bender, ___ F. Supp. 2d ___, No. 12 C 2148, 2013 WL 2285853, at *10-11 (N.D. Ill. May 21, 2013) (discussing the problem with malice at some length and concluding that under Illinois law "malice may be inferred from a lack of probable cause in limited circumstances . . . ." (emphasis omitted)). The court notes, however, that the most recent published interpretation from the Seventh Circuit comes to the conclusion that a lack of probable cause is sufficient to establish malice. See Aleman, 662 F.3d at 907 (noting that Illinois law permits "an inference of malice to be drawn from an absence of probable cause"). Nevertheless, after reviewing plaintiff's complaint, the court is convinced that plaintiff states a plausible malicious prosecution claim under either standard.

The complaint sets out a series of facts that, when assumed to be true, clearly show a lack of probable cause to arrest plaintiff for battery on a police officer or resisting arrest. According to the complaint, Nesemeier invaded plaintiff's home, tackled the apparently unresisting plaintiff against a love seat, handcuffed her, and then struck her repeatedly in the face. Because those allegations lack any indication that Nesemeier had probable cause to arrest plaintiff for battery or resisting arrest, they plausibly state a claim for malicious prosecution presuming malice can be implied by the lack of probable cause in line with Aleman and the other cases which hold as much.

Even if malice cannot be implied by the lack of probable cause, plaintiff's complaint sufficiently sets out the additional "improper act" needed to satisfy the standard espoused in McDade and those cases like it. Attached to the complaint, and incorporated into it by reference, is a report drafted by Nesemeier which sets out his version of events on the day of plaintiff's arrest. His version of what happened that day is, needless to say, considerably different than plaintiff's version alleged in her complaint. According to the complaint, Nesemeier testified at plaintiff's trial. Therefore, it is a reasonable inference that Nesemeier testified in conformity with his version of the events of that day.[2] See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Assuming plaintiff is able to prove that her allegations are true, as this court is required to do at this stage of the litigation, plaintiff will also have shown that Nesemeier provided false testimony to the court at her trial. Therefore, she has sufficient factual

---

[2]The court also notes that, attached to the motion for summary judgment, is the testimony referred to in the complaint. Nesemeier did, in fact, testify largely in conformity with his prior report.

10

allegations in her complaint to lead to a plausible statement of malice, even if the higher threshold is the appropriate one.

Accordingly, the motion to dismiss the claim for malicious prosecution against Nesemeier (Count V) is denied.

### 4. The Remaining Arguments

The only two remaining arguments unaddressed to this point are that the claim for deliberate indifference against Williams should be dismissed for failure to state a claim and that respondeat superior claim against Snyders should be dismissed because the claims pursuant to § 1983 against Nesemeier and Williams cannot be the basis for respondeat superior and because the only claim that can, the malicious prosecution claim against Nesemeier, should be dismissed. The court has no occasion to consider the first argument as the claim against Williams has been dismissed supra as time barred. The court concurs with the second argument that Snyders cannot be vicariously liable for the § 1983 claims, and thus the respondeat superior claims against him based on those claims must be dismissed. See Monell, 436 U.S. at 694; Gonzalez v. City of Elgin, 578 F.3d 526, 536 (7th Cir. 2009). However, since this court declined to dismiss the malicious prosecution claim against Nesemeier, Snyders can be held vicariously liable for that state tort under the doctrine of respondeat superior. See Gonzalez, 578 F.3d at 541-42 (reinstating a claim for respondeat superior against an employer where it reinstated a state claim for malicious prosecution against an officer). Accordingly, the motion to dismiss the claim for respondeat superior (Count IX) is granted except to the extent it seeks to hold Snyders liable for the malicious prosecution tort alleged against Nesemeier.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment on Counts I and XI—the Fourth Amendment § 1983 claims against Nesemeier and the indemnification claim against Stephenson County based on the Fourth Amendment § 1983 claims—arguing that the findings of the state trial judge at plaintiff's criminal trial are binding on this court under the doctrine of collateral estoppel. Specifically, the state trial court determined that the "situation . . . was created wholly by Deputy Nesemeier, ignoring your request to leave and go get an arrest warrant or to go get a search warrant. I believe that is the person that he is the person that created this entire situation . . . and I find you not guilty of both offenses." Defendants argue that collateral estoppel does not apply, as Nesemeier was a witness, not a party, to the criminal prosecution and the issue at trial was not whether Nesemeier had violated plaintiff's rights but whether plaintiff had committed the crimes of battery or resisting arrest.

"The doctrine of collateral estoppel, an offshoot of res judicata, teaches that a judge's ruling on an issue of law or fact in one proceeding binds in a subsequent proceeding the party against whom the judge had ruled . . . ." Loera v. United States, 714 F.3d 1025, 1028 (7th Cir. 2013). Whether plaintiff's § 1983 claims are established by the state proceedings is determined by looking to the state's rules for collateral estoppel (also known as issue preclusion). See 28 U.S.C. § 1738; Brown v. City of Chi., 599 F.3d 772, 774 (7th Cir. 2010).

> Under Illinois's issue preclusion law, an issue litigated in a prior proceeding may not be relitigated if (1) the issue decided in the prior adjudication is identical

11

with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

Brown, 599 F.3d at 774 (quotation marks omitted). "Moreover, under Illinois law, a criminal conviction precludes relitigation of issues that were necessarily decided in the criminal proceedings." Id.

The court need not spend much time resolving this issue, however, as federal courts, including courts within this circuit applying Illinois law, have overwhelming held that an officer is not a party to a criminal action nor is he in privity to the state which brought the criminal action, so that collateral estoppel is inapplicable. See Kraushaar v. Flanigan, 45 F.3d 1040, 1050-51 (7th Cir. 1995); Williams v. Kobel, 789 F.2d 463, 469-70 (7th Cir. 1986); Delgadillo v. Paulnitsky, No. 05 C 3448, 2007 WL 1655252, at *4 (N.D. Ill. June 1, 2007); Perkins v. City of Chi., No. 04 C 2855, 2005 WL 2483385, at *1 (N.D. Ill. Oct. 6, 2005); see also Walczyk v. Rio, 496 F.3d 139, 150 n.13 (2d Cir. 2007) (stating that it is not likely that a collateral estoppel argument in similar circumstances "would be convincing in light of numerous decisions declining to hold individual state officials bound, in their individual capacities, by determinations adverse to the state in prior criminal cases" and collecting cases); Kinslow v. Ratzlaff, 158 F.3d 1104, 1106-07, 1107 n.4 (10th Cir. 1998) (finding that officers were not parties or in privity to prior criminal proceedings and collecting cases holding the same). Plaintiff attempts to factually distinguish some of this avalanche of authority, but provides not a single case where a court permitted a plaintiff to use the doctrine of collateral estoppel to bind a police officer who was a witness, even the primary witness, in a previous criminal adjudication.

The court notes that this case is even less apt for collateral estoppel than many of the situations that faced the courts cited above. Typically, plaintiffs have attempted to use collateral estoppel to bind an officer to a ruling in a probable cause hearing or suppression hearing, depending on whether it is an illegal arrest or search that is in contention. See, e.g., Kraushaar, 45 F.3d at 1050; Williams, 789 F.2d at 467-68. Here, however, plaintiff seeks to use her acquittal as proof of lack of probable cause to arrest or enter her home. A trial on the merits of a criminal citation tests whether the state can present sufficient evidence to prove a criminal defendant guilty beyond a reasonable doubt, it does not test the constitutionality of the officers' actions surrounding an arrest. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest."). Accordingly, the interest involved in the hearing which plaintiff seeks to use for estoppel was different than the interest involved in the § 1983 suits against Nesemeier in the instant case. Indeed, although the judge mentioned the Fourth Amendment in his ruling at the bench trial and acquitted plaintiff because he felt that the "entire situation" was of Nesemeier's making, he does not explicitly state that Nesemeier either (1) lacked probable cause or (2) violated the Fourth Amendment.

For the foregoing reasons, the motion for summary judgment is denied.

## III. CONCLUSION

Defendants' motion to dismiss is granted as to Counts II-IV, VI-VIII, and X. It is denied as to Counts V and IX. Plaintiff's motion for summary judgment is denied. That leaves, in total, Counts I,[3] V, IX, and XI still pending.

Date: 10/9/2013

ENTER:

FREDERICK J. KAPALA

District Judge

---

[3] As limited by this Court's previous order.